CUSHMAM and others *vs.* SHEPARD and others.

Form and requisites of a decree against the stockholders of a corporation for manufacturing purposes, formed under the act of March 22, 1811, on a bill filed by a creditor, subsequent to the dissolution of the corporation, to compel the payment, by the defendants, of a debt owing by the corporation; where a portion of such stockholders have paid for their stock in full, and have also paid other sums towards the debts of the company, and the other stockholders have not paid for their stock in full, and have contributed nothing towards the payment of its debts.

Where a corporation formed for manufacturing purposes, under the act of March, 1811, was dissolved by limitation of time, and a new company, having the same

Cushman *v.* Shepard.

amount of capital and bearing the same name, was formed by the stockholders of the old one, or a part of them, and all the property and effects of the old corporation were transferred to, and received by the new company, which continued the business, without any apparent change of interest, until it was dissolved by a sale of all its property upon execution; *Held* that the new company was intended by all parties as a virtual continuation of the old corporation, with all its responsibilities and obligations; and that such new company, and the personal liability of the persons who were its stockholders at the time of its dissolution, constituted the primary fund for the payment of a judgment recovered against such company, for a debt due by the old one; which fund must be exhausted before the judgment creditor could resort to the personal liability of the stockholders of the old company; the new company being considered the principal debtor and the old company the surety.

Where complainants alleged in their bill that a defendant was a stockholder of a company, at the time of its dissolution, and the defendant, in his answer, denied that he was the owner of any of the stock of the company, at that time, and alleged positively that previous to such dissolution, he had assigned all his stock to another person; *Held* that such denial and averment were responsive to the bill, and were conclusive as to the fact, until overthrown by the testimony of more than one witness.

IN EQUITY. This was an appeal by the defendant Shepard, from a decree of the late vice chancellor of the fifth circuit. The bill was filed by the complainants as creditors of " The Phenix Manufacturing Company," to recover from the defendants, who were alleged to be the stockholders composing said company, at the time of its dissolution, a debt which was then due and owing to the complainants, from the company. The bill was founded on the 7th section of the " act relative to incorporations for manufacturing purposes," passed March 22, 1811; which section contained the following provision: "and that for all debts which shall be due and owing by the company at the time of its dissolution, the persons then composing such company shall be individually responsible to the extent of their respective shares of stock in the said company, and no further," &c. (3 *R. S.* 222, 2*d. ed.*) The Phenix Manufacturing Company was incorporated December 26, 1821, and was dissolved by limitation of time, on the 26th of December, 1841. The debt of the complainants was contracted May 5th, and August 17th, 1841, and a judgment was recovered for $1742,41 March 17, 1843, and an execution was issued and returned unsat-

Cushman *v.* Shepard.

isfied. The defendants were all alleged, in the bill, to have been stockholders at the time of the dissolution of the company. It appeared from the answer of the defendant Campbell, and from the evidence, that on the 23d of December a new company, embracing the same stockholders as the old company, or a part of them, was incorporated, by the same name as the old company, and that all the property of the old company was transferred to the new corporation. The new company continued to carry on the business until on or about the 1st of March, 1843, when the corporation was dissolved by a sheriff's sale of all the property of the company. At the time of the dissolution of the old company, the stock in that company was held by the defendants in equal proportions, i. e. $83\frac{1}{3}$ shares each. A part of the stockholders, including the defendant Shepard, had paid for their stock in full, and three of them, Campbell, Page and Morehouse, had paid considerable sums in addition, towards the debts of the company, but the other stockholders had not paid for their stock in full.

The vice chancellor made a decree for the payment of the complainants' debt, by the defendants; directing a reference to a master to ascertain the debts due by the Phenix Manufacturing Company, exclusive of the complainants' debt; and allowing any of the creditors to come in and prove their debts on the foot of the decree. The decree also directed the master to ascertain the solvency of the stockholders, and the balance payable by each, and to make all just allowances, &c.

*H. Denio*, for the appellant. I. Only those stockholders are individually responsible who were such stockholders at the time of the dissolution of the corporation. The defendant Shepard had ceased to be a stockholder of the corporation which was the complainants' debtor, prior to the time of the dissolution of that corporation. (*See* 2 *R. S.* 222, § 7; *Dibble* v. *Rogers,* 13 *Wend.* 536, 541; 1 *R. S.* 758, §§ 10, 11, 12.)

(1.) The complainants are estopped from alleging that the corporation against which their demand existed was dissolved at any time prior to March 17th, 1843, the day on which they

Cushman *v.* Shepard.

obtained their judgment. (*Cong. Soc.* v. *Perry*, 6 *New Hamp. Rep.* 164. 2 *Ld. Raym.* 613, 614. 4 *Starkie's Ev.* 1508. *Jackson* v. *Sheldon*, 5 *Cowen*, 548, 554. *Penant's case*, 3 *Coke*, 64, 3*d resolution. Slee* v. *Bloom*, 19 *John.* 456, 477. *S. C.* 20 *Id.* 683, 684. *Angel & Ames on Corp.* 668. (2.) But if not technically estopped, the complainants have elected, by a solemn act of record, to affirm the corporation as having an existence as late as March 17th, 1843, and are concluded by such election. (*Jackson* v. *Sheldon*, 5 *Cowen*, 548. *Penant's case*, 3 *Coke*, 64. 2 *Ld. Raym.* 614. 4 *Stark. Ev.* 1508.) (3.) But supposing the old corporation must be deemed to have been dissolved on the 26th of December, 1841, it was competent by a joint act of the creditors and the new corporation to transfer the burthen of the debt from the old to the new corporation. This was effectively done by the judgment which the plaintiffs recovered. (*Robertson* v. *Smith*, 18 *John.* 459. *Penny* v. *Martin*, 4 *John. Ch. R.* 566.) (4.) The bill treats the old and the new company as identical, and shows that the complainants adopted the latter as their debtors. (5.) Of the complainants' debt, $724,81 was contracted the 18th of August, 1841, at a credit of 6 months. As to that amount the old company was never liable to be prosecuted.

II. The decree of the vice chancellor is erroneous in these particulars : the complainants' debt is charged jointly upon all the defendants; whereas each should have been charged with such a proportion thereof as the amount of his stock bore to the whole stock of the corporation owned by the defendants. (2 *R. S.* 465, § 50, 1*st ed. Id.* 45 *to* 50. *Fisk* v. *The Keeseville Manuf. Company*, 10 *Paige*, 592. *The Bank of Poughkeepsie* v. *Ibbotson*, 5 *Hill*, 461. *Penniman* v. *Briggs, Hopk.* 305.) Before any contribution was decreed against Shepard, whose stock had been all paid up, the stockholders who had not fully paid should have been decreed to pay up the balance due upon their shares. (2 *R. S.* 465, § 49.) The debts due from the company to the stockholders cannot be taken into account in ascertaining the amounts for which they are respectively liable under the provisions of the 7th section of the act of 1811; but

if they were, still the other stockholders have not paid an amount equal to that charged upon Mr. Shepard by the decree appealed from. (*See Bailey* v. *Barker*, 3 *Hill*, 188.) An account should have been directed to be taken of all the debts due from the company. (2 *R. S.* 465, § 46.) There should have been a reference to a master. The costs of the suit at law should not have been charged upon the defendants. (*Bailey* v. *Barker*, 3 *Hill*, 188.) The decree should be reversed : and if the defendant Shepard is liable at all, an account should be taken upon legal principles, and a decree be made charging the defendants with their several proportions of the complainants' debt.

*F. Kernan,* for the respondents. I. The certificate filed in the office of the secretary of state on the 23d of December, 1841, created a new corporation. It was neither a continuance nor a revival of the old corporation of the same name. The " act relative to incorporations for manufacturing purposes" limits the continuance of all corporations created under that act to 20 years, and does not provide for any continuance or renewal of such corporations. Neither the officers nor the majority of the members of the old and new corporation were the same. (*See Angell & Ames on Corp. ed. of* 1843, *pp.* 668, 669 ; *Bellows* v. *Hallowell & Augusta Bank,* 2 *Mason's C. C. R.* 43, 44 ; *Wyman* v. *Hallowell & Augusta Bank,* 14 *Mass. Rep.* 58.)

II. The complainants are entitled to a decree for the whole amount of their debt against all the defendants, including costs of recovering judgment against the company. Because there are no other debts of the company ; and the defendants are all liable, under the statute, for a greater amount than the plaintiffs claim ; and the question of contribution must be settled among themselves.

GRIDLEY, J. When this case was before me as vice chancellor, it was disposed of on the hearing without any formal argument, upon a statement of the facts by the counsel for the complainants, which was assented to by the counsel for the de-

Cushman *v.* Shepard,

fendants other than Mr. Shepard, and mainly agreed to by his counsel. It was, however, insisted that Mr. Shepard was not liable as a stockholder, he having transferred his stock before the dissolution of the company to Edward Shepard, his son; and the evidence to prove such assignment was adverted to. But as in my judgment it failed to prove a *delivery* of the assignment to the assignee, I held the defendant, Shepard, liable, as well as the other defendants, and directed a decree to be entered in favor of the complainants, containing substantially such provisions as are stated in the minutes of the clerk. I cannot think that my attention was called to the fact that the *answer* of the defendant Shepard *responsively denied* that he was a stockholder at the time of the alleged dissolution of the company.

The decree was entered, it seems, without ever having been legally settled, and in violation of the express directions which the clerk's minutes show were given by the court in relation to the provisions to be inserted in it. No motion, however, was made to correct the decree, or to set it aside as irregularly entered; and it must now be regarded as *regular* and as the decree of the court; and by consequence, if it be found to be erroneous, it must be *modified* or *reversed*.

That it is erroneous in the particulars in which it departed from the directions given on the hearing, is, I think, quite clear. There should have been a reference to ascertain the debts due by the company—the stockholders who were liable—and if any of them had paid, on the debts due by the company, over and above the amount of their stock paid in, so as to reduce the sum in which they would respectively be liable on this bill, to ascertain such sum in each case—and to apportion among the late stockholders who are liable the amounts respectively chargeable on each, &c. (*Fisk* v. *The Keeseville Manuf. Company*, 10 *Paige*, 592. *Penniman* v. *Briggs, Hopkins*, 305. *Same case in error*, 8 *Cowen*, 387. 19 *John*. 450, 472. 20 *Id*. 183.) If the relief is sought against such defendants as were members of the company at the time of its dissolution, by lapse of time, then the decree should not have embraced either the $184,11,

sworn to by the witness Smith, (there being no such assignment of this demand proved as would authorize a recovery in the name of the complainants alone, even in a court of equity,) or the costs of the suit at law; for the suit was against the *new company*, and for *their* costs the stockholders of the *old* were not liable. (10 *Paige*, 592. 5 *Hill*, 461. 3 *Id*. 188.) The decree should have first required the payment of all unpaid instalments of stock which were collectable, in analogy to the course directed to be taken by the act entitled "of proceedings against corporations in equity," (2 *R. S.* 465, §§ 49, 50,) and then duly apportioned the residue among the parties liable according to the principles of the court of equity, whose appropriate office it is to settle all the rights and liabilities of the respective parties in one suit; and to provide for the apportionment of the burden among the several parties liable, and to enforce contribution upon equitable principles in one suit, so as to save the necessity of separate suits for contribution—and to prevent a useless circuity of actions.

But I think that the imperfect manner in which the rights of the defendant Shepard were presented at the hearing in the court below, occasioned a fatal error in the decree in relation to Shepard's liability upon this bill. It appears by the pleadings and proofs in the cause that the Phœnix Company expired by its own limitation on the 26th December, 1841, and that a new company was formed by the stockholders of the old one, or a part of them, on or about the 23d of the same month. And that all the property and effects of the old corporation were transferred to and received by the new company, which continued the business without any apparent change of interest, until on or about the 1st of March, 1843, when the corporation was dissolved by a sheriff's sale of all the property of the company, both real and personal. Now the liability of Shepard will depend on the fact whether he was a stockholder at the time of the dissolution of the corporation. (3 *R. S.* 222, § 7.)

I. Under this view of the facts it seems to me an undeniable proposition that the relief sought must be granted against him, if at all, on the ground that he was a member of the new com-

Cushman *v.* Shepard.

pany at the time of its dissolution in March, 1843, for several reasons.

I think that this is, upon a fair construction, the true scope and object of the complainants' bill. And that the bill cannot justly be regarded as claiming relief upon any other ground. It is true that the bill sets out the time of the organization of the first company, and the expiration of the 20 years' limitation ; but this statement is merely introductory to and connected with the statement of the formation of the new company, which at once succeeded to all the property and rights of the old one : and the pleader obviously regards the latter as merged in the new association in such a manner as to survive in its new organization, and thus to enjoy a continued life—never having lost, so far as respects its rights and liabilities, its personal identity. If this be not the object and scope of the bill, why did it contain any allegation concerning the suit at law ; the recovery of the judgment against the new corporation, or the formation of the new association, the transfer of the property of the old to the new, or the names of its stockholders ? And why does the bill speak of the Phœnix Company, from beginning to end, as one continuing corporation, without any distinction between the old and the new ? And unless it was the intention of the complainants to seek relief against the defendants as members of the new corporation, (who were such at the time of its dissolution,) why did they prove and take a decree for the costs of the suit against the new company, and for the demand of $184,11, which was unlawfully included in this judgment long after the old company had ceased to exist ? A bill *may* be drawn with a double aspect, and if properly framed, may claim any relief which is appropriate under the prayer, and under the state of facts set forth in it. But this bill does not on its face profess to be a bill with a double aspect. On the contrary, the obvious scope of the bill is to seek relief against the defendants as stockholders of the Phœnix Company at the time of its dissolution in March, 1843 ; treating it as the same company with that which was its original debtor, preserving its legal identity under its new organization.

Cushman v. Shepard.

The counsel for the defendant Shepard has insisted that by commencing a suit against the new corporation, and by the recovery of a judgment against it upon a promise to pay their demand against the old company, the complainants have *elected* to make the new corporation their debtor, and are *estopped* from asserting their claims against the old company, or against those who were its members at the time it was dissolved. Many authorities have been cited in support of this position, among which are 6 *N. Hamp. Rep.* 164; 2 *Lord Raymond*, 613, 614; 4 *Stark. Ev.* 1508; 5 *Cowen*, 545, 554; 3 *Coke*, 64; 19 *John.* 456, 477; 20 *Id.* 683, 684; *Angell & Ames on Corp.* 668.

But without holding that the complainants have made such an election as will *estop* them *absolutely* from resorting to the stockholders of the old company, I cannot doubt, upon the facts of this case, that the new company and the personal liability of its stockholders, constitute the *primary fund* for the payment of the complainants' demand, which must be exhausted before they can resort to the personal liability of the stockholders of the old company. The demand of the complainants was originally the proper debt of the Phœnix Company; and the property of that company was the primary and legitimate fund for its payment. And after that should be exhausted, and the company dissolved, the personal liability of the stockholders constituted (if I may be allowed the expression) an additional fund in reserve destined for the same object. But a new company was formed when the old one was about expiring, with the same capital stock, and the same stockholders—which company continued the business of the old one—received a transfer of the entire estate, real and personal, of the old company, and which we cannot doubt was intended by all the parties to it as a virtual continuation of the old corporation, with all its responsibilities and obligations. I do not say that the law will regard it as one continuous corporation: for if it will, there is an end of all individual liability of the stockholders, except of those who were such at the dissolution of the corporation, in March, 1843. But I maintain that this was the view

of those stockholders of the company who organized the new one by a transfer of their stock in the old one, and who, as corporators of the newly organized association, appropriated to the use of the latter all the property of the company. I insist also, that when the new association received the property of the old, it is to be regarded as having received it under a trust and obligation to pay the debts of the latter ; at least as to the debt of the complainants, who have recovered a judgment for the amount of their debt against the new corporation, *upon a promise to pay it*—as is shown by the record of judgment, as well as by the allegations in the bill itself. It is impossible to deny that the new corporation assumed the burden of discharging this particular debt ; and that the complainants, by receiving the new promise and prosecuting upon it, became parties to the new arrangement by which the burden of paying that debt was transferred from the stockholders of the old to the new company. And it is equally clear that the promise of the new corporation, to the complainants, was made on the condition of the transfer to the new company of the property of the old one, for there is not the slightest evidence of any other consideration in the case.

Now upon this state of facts it will be difficult to maintain that the old company, or its stockholders, are liable at all, or in any event, for the payment of the complainants' debt. But there can be no doubt that the new company, so long as it has any property, and when that is exhausted, and the company for that reason is dissolved, the personal liability of its stockholders, constitute the primary fund for the payment of this debt. It is like the case of A., the owner of lands, executing to B., his creditor, a bond and mortgage upon the premises, and then conveying the equity of redemption to C., not only subject to the payment of the bond and mortgage, but also accompanied with a covenant, which B. accepts, to pay the mortgage debt. By this means the land in the hands of C., and the personal liability of C., become the primary fund for the payment of this debt. That primary fund represents the principal debtor, and the personal liability of A. represents the surety. Just so

does the new corporation and the personal liability of its stockholders represent the principal debtor in the case at bar; while the stockholders of the old company, if liable at all, represent the surety, and the court of chancery will never enforce payment against the surety till the primary fund is exhausted. And besides, the bill in this case is not framed with the view of reaching such secondary and contingent liability of the stockholders of the old company, on the failure of a primary fund for the payment of the debt.

II. In the next place, if I am right in the position that the stockholders of the new company, who were such at the time of its dissolution, are alone liable on this bill, the next inquiry is whether the defendant Shepard was then a member of that corporation. I am still of the opinion, as I was on the hearing in the court below, that from the careless and unskilful manner in which the witness, Selden, was examined, the defendant has failed to show a delivery to, and acceptance by, Edward Shepard, or his agent, of the written assignment of the stock which was made an exhibit in the cause. But I am constrained to say that the answer, which is on oath, responsively denies that Shepard was a stockholder of the new company at the time of its dissolution. The fact had been distinctly charged in the bill, and in the answer at folio 8, is found this denial: "And this defendant denies that he was, at the time of the dissolution of said company, as is stated in said bill of complaint, the owner of any of the stock of said company." And after admitting that at one time he did hold $83\frac{1}{3}$ shares of said stock, which he received from his son as collateral security for a debt, he proceeds in folio 10 to allege as follows: "And this defendant further says, that on or about the 6th day of October, 1842, he, this defendant, did re-assign and transfer to said Edward Shepard the said $83\frac{1}{3}$ shares of said stock of said company," &c. This denial is direct and positive, and the averment of the transfer of the stock to Edward is also positive ; and both the denial in folio 8, and the averment which amounts to a denial in folio 10, are responsive, and are conclusive as to the fact, until overthrown by more than one witness. In *Hart* v. *Ten*

Cushman *v.* Shepard.

*Eyck*, (2 *John. Ch. Rep.* 85,) it was held that the answer of a defendant, (who was interrogated as to a payment,) alleging that he *did* make such payment, was responsive, as though it were a mere formal denial of a fact averred in the bill. (*See also Woodcock* v. *Bennett*, 1 *Cowen*, 744, 742, 711.) In this case the bill prayed for the specific performance of articles of agreement that had come to the defendant's hands, and inquired *how they were disposed of*, and *when, where*, and *under what pretences he got hold of them*. He answered that the articles were by consent *of parties rescinded and the seals torn off*. This was held by the court for the correction of errors, to be responsive. These cases are cited by Messrs. Cowen & Hill, (1 *Cowen & Hill's Notes*, 285,) where many other cases are collected confirming this doctrine, to which I will do no more than refer generally. And I will only add that the rule as stated above is the settled doctrine in our own state and in England, while only two cases are cited by Messrs. Cowen & Hill, (the first from 1 *Wash. Rep.* 224, and the other from 6 *Monroe*, 620,) holding a different rule.

Now there is nothing in the evidence to contradict these averments in the answer. The complainant might have called Edward Shepard for that purpose ;· but he did not. It was said on the argument that the answer was impeached by evidence, which seems to contradict the idea that Mr. Shepard held this stock merely as collateral security, and that he received it of his son. But I do not think that the credit of the answer is destroyed by this criticism. As between the defendant Shepard and his son, it may well be that it was assigned as collateral security. And it may be that Mr. Edward Shepard held a mere executory contract for this stock of Mr. Turner, without any actual assignment having been made, though the interest in the stock had passed to him. Such an error cannot overthrow the credit of the answer so as to destroy the effect of a responsive and direct denial.

I am, therefore, of the opinion that the defendant Shepard was not liable upon the bill filed in this cause.

Decree appealed from reversed.